**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **LINDA MERCER,** | | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | **Case No.: GJH-21-3274** |
| | | |
| **AMALGAMATED TRANSIT UNION** | * | |
| **DIVISION 689, AFL-CIO, *et al.*,** | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

Plaintiff Linda Mercer brings this civil action against Defendant Amalgamated Transit Union International ("ATU International"); and Defendants Amalgamated Transit Union Division 689 ("Local 689"); Raymond Jackson, current Local 689 president; and Jackie Jeter, former Local 689 president (collectively, "Local Defendants"), for sex discrimination that prevented her from running for a position with Local 689. ECF No. 1. Pending before the Court are two Motions to Dismiss filed by Defendant ATU International, ECF No. 13, and by the Local Defendants (Local 689, Jackson, and Jeter), ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendant ATU International's motion is granted, and Local Defendants' motion is granted in part and denied in part.

## I.      BACKGROUND[1]

Plaintiff Mercer, a woman, has been a bus operator with the Washington Metropolitan Area Transit Authority ("WMATA") since 2002. ECF No. 1 ¶ 10. She has also, at all times during her employment, been a union member in good standing with Local 689. *Id.* at ¶ 11. In or around October 2017, Mercer sustained an injury that rendered her unable to work as a bus operator, and as a result, WMATA placed her on the "124 List"—a list of employees affected by a disability that prevents them from fulfilling their job duties. *Id.* ¶ 16. During this period, she continued to pay her union dues and thus remained a member in good standing. *Id.* ¶ 17. In November 2018, Local 689 held nominations for the December 2018 union election, and Plaintiff was nominated for one of two shop steward positions at the WMATA Metrobus Shepherd Parkway Division. *Id.* ¶ 20. Plaintiff had previously been elected to the position in 2015. *Id.* ¶ 21. On or around November 29, 2018, Defendant Jeter, then-president of Local 689, informed Plaintiff that she would not be permitted to run for shop steward because her dues were not current. *Id.* ¶ 22. On or around November 30, 2018, Plaintiff confirmed with the Local 689 treasurer that, contrary to Defendant Jeter's remarks, she was current with her dues, and thus was eligible to run for office as a member in good standing. *Id.* ¶ 23. Plaintiff, however, was prevented from running. *Id.* ¶ 24. On December 5, 2018, the union elections were held. *Id.* ¶ 25. Several weeks later, Local 689 held a union meeting where Plaintiff's inability to run in the election was discussed. *Id.* Defendant Jeter said at this time that Plaintiff was not permitted to run because she was on the 124 List for disabled employees. *Id.* Plaintiff alleges that this reasoning was "clearly pretextual" because at least two male members of Local 689 had been

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

permitted to run for office in the December 2018 elections, despite being on the 124 List. *Id.* ¶¶ 26–29.

On or around December 6, 2018, Plaintiff sent a letter to the Local 689 Election Committee and Executive Board, challenging the election on the basis that she was blocked from running. *Id.* ¶ 31. Several weeks later, the Board denied her challenge. *Id.* ¶ 32. On or around January 8 and January 9, 2019, Plaintiff appealed directly to members of Local 689, at the chapter's meetings, to overturn the election results for denying her the ability to run, despite the fact that male union members on the 124 List were permitted to run. *Id.* ¶ 33. After discussions, Local 689 members voted to overturn the results of the December 2018 election, and a second election was scheduled for March 13, 2019, in which Plaintiff would be permitted to run. *Id.* ¶ 35.

Following the member vote, certain members of Local 689 filed an appeal of that vote with Defendant ATU International. Plaintiff alleges, on information and belief, that the appeal was written and filed by Defendant Jeter on behalf of the named members, although Jeter had since retired and was no longer serving as president of Local 689. *Id.* ¶¶ 37–39. Plaintiff asserts that Jeter appealed the decision despite the fact that "standard pattern and practice" dictates that the Local 689 president alone may appeal a decision of membership to ATU International. *Id.* ¶ 38. Plaintiff asserts she was not made aware of the appeal or given the opportunity to respond. *Id.* ¶ 41.

On or around March 12, 2019, the day before the rescheduled election was to take place, ATU International issued an opinion overturning the membership's vote to allow Plaintiff to run

for shop steward.[2] *Id.* 42. In a letter to Plaintiff, representatives from ATU International asserted that, in order to run for a union position, a member must be working at the Division where they were running for union office, and thus, Plaintiff's extended leave for disability "for some time" precluded her from running for shop steward. *Id.* As such, Plaintiff alleges that she was unable to run in the rescheduled election on March 13, 2019. *Id.* ¶¶ 43–44.

Plaintiff further asserts that on or around March 14, 2019, Defendant Jeter posted a video to Facebook publicly disclosing Plaintiff's disability status "in an attempt to justify the discriminatory treatment." *Id.* ¶ 46. The video also purportedly contained public disclosure of Plaintiff's home address. *Id.* ¶ 48. Plaintiff alleges that in the wake of the video, she was "subject to ridicule regarding her disability" from union members. *Id.* ¶ 47.

On or around August 12, 2019, Plaintiff subsequently filed complaints of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") for the alleged incidents in December 2018 and March 2019. *Id.* ¶ 49. She also appealed ATU International's March 2019 decision to ATU International's Convention, held in September 2019. *Id.* ¶ 51. The appeal was denied. *Id.* ¶ 52. On or around September 25, 2021, EEOC issued Plaintiff a Right to Sue Notice against Local 689 and ATU International. *Id.* ¶ 54.

On December 23, 2021, Plaintiff filed a Complaint, alleging violations of Title VII of the Civil Rights Act ("Title VII") for gender discrimination, 42 U.S.C. § 2000e-2(c)(1), and unlawful retaliation, § 2000e-3(a), and violations of the Americans with Disabilities Act ("ADA") for disability discrimination and retaliation, pursuant to 42 U.S.C. § 12112. Plaintiff

---

[2] The Complaint names Lawrence Hanley, then-president of ATU International, as a Defendant, and alleges that he was the author of the opinion overturning the membership vote. Defendant Hanley is now deceased and has been voluntarily dismissed from the case. *See* ECF No. 6; ECF No. 13-1 at 1 n.1.

also brings claims for breach of contract, intentional infliction of emotional distress, and negligence or gross negligence.

On April 18, 2022, Defendant ATU International and Defendants Local 689, Jeter, and Jackson, each moved to dismiss the case. ECF No. 13; ECF No. 14. Plaintiff responded, and Defendants replied.[3] *See* ECF No. 19; ECF No. 20; ECF No. 21; ECF No. 22.

## II.   STANDARD OF REVIEW

Defendants first move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Once a challenge is made to subject matter jurisdiction, Plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also Ferdinand–Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010). The Court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (citation omitted). In ruling on a motion to dismiss under Rule 12(b)(1), the Court may consider evidence outside the pleadings to help determine whether it has jurisdiction over the case before it without converting the motion to one for summary judgment, *see id.*, but the court "must presume that the factual allegations in the complaint are true." *Cash v. United States*, No. 12-cv-0563-WDQ, 2012 WL 6201123, at *3 (D. Md. Dec. 11, 2012) (citation omitted).

Defendants also move to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing

---

[3] Plaintiff's Non-Opposed Motion for Extension of Time, ECF No. 18, is granted.

*German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Defendants argue that Plaintiff's claims should be dismissed in their entirety on two independent jurisdictional grounds: (1) because Title VII and the ADA are federal employment discrimination statutes, and her allegations do not concern discrimination that occurred within her employment; and (2) because the Labor-Management Reporting and Disclosure Act, 29

6

U.S.C. §§ 481–83 ("LMRDA"), preempts all "claims for postelection relief" arising out of previously conducted union officer election as being under the exclusive jurisdiction of the Secretary of Labor. ECF No. 13-1 at 4–13; ECF No. 14-1 at 3–5.[4]

### i.  Title VII and ADA Jurisdiction

Defendants argue that Plaintiff's claims fail under Title VII and the ADA because they arise out of her involvement with the union, not her employment.[5] As relevant here, Title VII provides that "[i]t shall be an unlawful employment practice for a *labor organization*—to exclude or to expel from its membership, *or otherwise to discriminate against*, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1) (emphasis added).

Defendants assert that Plaintiff's Title VII claims are contrary to statutory intent, and inappropriate in a case like this, where the "alleged discrimination by a labor union [has] no employment consequences or relation whatsoever." ECF No. 13-1 at 7.[6] However, the provision at issue is distinct from section 2000e-2(a), which proscribes unlawful practices of *employers*. Courts have distinguished these two provisions, finding, for instance, that a labor union must meet the statutory definition of "employer" in order for a union employee to bring a claim against a union in its capacity as employer under section 2000e-2(a). *See Ferroni v. Teamsters, Chauffeurs & Warehousemen Loc. No. 222*, 297 F.3d 1146, 1151 (10th Cir. 2002) (collecting cases). As such, "it [is] plain that these subsections refer to discrimination in two different types

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[5] Defendants further argue that because the Title VII and ADA claims are inappropriate, the Court should not extend supplemental jurisdiction over Plaintiff's common law claims. *See* ECF No. 13-1 at 10.

[6] Local Defendants adopt and incorporate by reference ATU International's jurisdictional arguments in favor of dismissing the Complaint under Rule 12(b)(1). ECF No. 14-1 at 3.

of relationships," where "[s]ection 2000-2(a) outlaws discrimination by an employer in the employer-employee relationship, while section 2000e-2(c) outlaws discrimination by a labor organization in the union-member relationship." *Id.*

Thus, a fair reading of Section 2000e-2(c)(1) "bars any kind of 'discrimination' by a union," including, for instance, discrimination in the treatment of grievances and the creation of a hostile work environment for a union member on the basis of race or sex. *Scott v. City of New York Dep't of Correction*, 641 F. Supp. 2d 211, 224–25 (S.D.N.Y. 2009), *aff'd sub nom. Scott v. New York City Dep't of Correction*, 445 F. App'x 389 (2d Cir. 2011) (collecting cases); *Dowd v. United Steelworkers of America, Local No. 286*, 253 F.3d 1093, 1102 (8th Cir.2001); *see also Murphy v. Adams*, No. CIV.A. DKC 12-1975, 2013 WL 398753, at *3 (D. Md. Jan. 31, 2013) (collecting cases) (finding that "a labor union can be liable where it directly engages in discrimination by, for example, deliberately refusing to pursue a sexual harassment grievance on behalf of a plaintiff"). Labor unions can also "[c]ertainly … be liable under Title VII for discriminating on the basis of race against individuals seeking union membership or participating in union activities, or classifying members by race, or referring members for work opportunities on the basis of race." *Phillips v. UAW Int'l*, 149 F. Supp. 3d 790, 802 (E.D. Mich. 2016), *aff'd on other grounds*, 854 F.3d 323 (6th Cir. 2017). Further, the Court takes seriously the Fourth Circuit's observation that "there may well be cases of … discrimination in the conduct of internal union affairs that come within the ambit of Title VII" via section 2000e-2(c)(1). *Tucker v. Tobacco Workers Int'l Union, AFL-CIO, Loc. 183*, 488 F.2d 76, 78 & n.4 (4th Cir. 1973).

Accordingly, the Court will not dismiss Plaintiff's Title VII claims for lack of subject-matter jurisdiction.

Turning to Plaintiff's ADA claims, federal law also prohibits discrimination on the basis of disability. Plaintiff asserts in her Complaint that in failing to permit her to run for shop steward, Local 689 violated the ADA's employment discrimination provision. 42 U.S.C. § 12112. Under that provision, the ADA provides that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*Id.* § 12112(a). A "covered entity" is "an employer, employment agency, *labor organization*, or joint labor–management committee." *Id.* § 12111(2) (emphasis added).

Nevertheless, the plain text of the statute, unlike that of Title VII, appears to contemplate discrimination directly within the context of employment—whether that is hiring or discharge, compensation, training, or "other terms, conditions, and privileges of employment."

Courts, likewise, have found that the ADA "prohibits unions from discriminating against individuals for any matter related to employment." *Ehnert v. Steamfitters Loc. 449*, No. CV 18-979, 2020 WL 1159172, at *4 (W.D. Pa. Feb. 4, 2020), *report and recommendation adopted*, No. 2:18CV979, 2020 WL 1158700 (W.D. Pa. Mar. 10, 2020). This may include situations "where an employer engages in unlawful discrimination and the union purposefully or deliberately acquiesced in the prohibited conduct." *Dulaney v. Miami-Dade Cnty.*, 785 F. Supp. 2d 1343, 1354 (S.D. Fla. 2011), *aff'd*, 481 F. App'x 486 (11th Cir. 2012) (citations omitted). Courts have also intervened where a union has "breached its duty of fair representation by allowing an employer's violation of the collective bargaining agreement to go unrepaired," if it is shown that "the union's actions were motivated by discriminatory animus." *Schaefer v. Erie Cnty. Dep't of Soc. Servs.*, 82 F. Supp. 2d 114, 118 (W.D.N.Y. 2000).

Here, the Court was not presented with, nor can it otherwise find, any cases that interpret section 12112 of the ADA so broadly as to encompass the internal affairs of labor unions, separate from issues of employment. Nor is there any other provision of the federal disability law that clearly incorporates the type of conduct alleged. In response to Defendants' motions to dismiss, Plaintiff points to the Findings and Purpose section of the ADA, which includes the finding that a mental or physical disability should not "diminish a person's right to fully participate in all aspects of society." 42 U.S.C. § 12101(a). The Court concurs with this sentiment; however, it agrees with Defendants this mandate alone does not provide a cause of action in this matter. ECF No. 21 at 5.

As such, the Court will dismiss Plaintiff's ADA claims for lack of jurisdiction.

### ii.  LMRDA Preemption

Defendants also argue that this Court lacks jurisdiction to hear Plaintiff's claims because they are subject to the exclusive jurisdiction of the Secretary of Labor. ECF No. 13-1 at 10–13. Title IV of the LMRDA provides "an elaborate postelection procedure" that is "aimed solely at protecting union democracy through free and democratic elections." *Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 528 (1984); *see Hugler v. Loc. 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 861 (D. Md. 2017). When a union member seeks to challenge an already-held election, the law mandates that she first exhaust all internal union remedies, before filing a complaint with the Secretary of Labor, who may bring a civil action in district court if there is reasonable cause to believe there has been a Title IV violation. 29 U.S.C. § 482. This is the exclusive remedy for exercising Title IV rights. *Id.* § 483; *see Davis v. Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am. (UAW)*, 392 F.3d 834, 839 (6th Cir. 2004), *overruled on other grounds by Blackburn v. Oaktree Cap. Mgmt., LLC*, 511 F.3d 633 (6th Cir. 2008).

However, Title IV also "specifically regulates the conduct of elections for union *officers*." *Crowley*, 467 U.S. at 539 (emphasis added). Under the law, a union "officer" is "any constitutional officer" or "any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body." 29 U.S.C. § 402(n). Further, determining whether a union position is an officer position appears to be a factual inquiry. *See Perreault v. Loc. 509, Int'l Union of Elec., Elec., Tech., Salaried, & Mach. Workers, AFL-CIO*, 823 F.2d 35, 37 (2d Cir. 1987) (holding that the position of "Zoneman," which involves "the funneling of employee grievances," was not an officer position because "[t]he Zoneman does not sit on the Executive Board, does not set policy for the Union, and has no administrative nor executive functions"); *Fiori v. Truck Drivers Union Local 170*, 130 F. Supp. 2d 150, 155 (D. Mass. 2001) (holding same for position of "Business Agent").

Here, Plaintiff sought to run for a position as shop steward with Local 689. ECF No. 1 ¶ 20. There appears, however, to be a conflict in the record as to whether Plaintiff's position as shop steward is an officer position under the auspices of Title IV. This question is significant because "[i]f the Title IV regulations do not apply to the election of [a union position], then the exclusivity provisions of Title IV are likewise inapplicable." *Knisley v. Teamsters Loc. 654*, 844 F.2d 387, 391 (6th Cir. 1988).

Plaintiff asserts that Local 689's bylaws provide two paths for members to run for the position of shop steward: some shop stewards are also members of the Executive Board and others are not. ECF No. 19 at 23; ECF No. 19-2 at 32. Plaintiff alleges that she sought to run for

11

a position as a *non-executive* shop steward and, by extension, appears to argue that she was not seeking an officer position subject to Title IV. ECF No. 19 at 23. Defendants, however, assert that Plaintiff sought to run for a position as a shop steward *and* Executive Board member, thus subjecting herself to Title IV's exclusivity provision. ECF No. 13-1 at 10. Thus, at this time, it is not clear whether Plaintiff sought a position that would provide her with an automatic seat on the Executive Board, nor is it clear whether a non-executive shop steward position is sufficient to be considered an officer position pursuant to the LMRDA.

Plaintiff appears to take the argument even further, arguing that she is not subject to Title IV because the position she sought did not make her an automatic delegate to ATU International's organizing convention. ECF No. 19 at 23. In *Murray v. Amalgamated Transit Union*, 220 F. Supp. 3d 72, 76 (D.D.C. 2016), the court made a similar finding, holding that a union official who was not a delegate was not subject to the exclusivity provisions of Title IV. However, in reviewing the case, the Court agrees with Defendants that the substance of the dispute in *Murray* is notably different from the one at hand. There, the case involved a local union consisting of entirely public-sector employees and a parent union (ATU International) made up of both private- and public-sector employees. The LMRDA does not typically apply to local public-sector unions unless the local has a mixed parent union, and the local union participates in the election of the parent union's officers via convention delegates. *Id.* As such, in that case, delegates to the convention are subject to the requirements of Title IV, including its exclusivity provision. *Id.* Here, however, Local 689 is a mixed union, like its parent ATU International, and thus the specific finding in *Murray* regarding delegates does not appear to be relevant.

Nevertheless, this does not end the inquiry. As the *Murray* court explains more generally: "Title IV remedies may toggle on or off depending on the position sought in a particular election." *Id.* at 81. The Court views the relevant holding in *Murray*—that the plaintiff was not subject to Title IV because he was not a delegate to the parent union's convention—to be one fact-specific outgrowth of this broader principle. As noted above, only officers may be subject to the provisions of Title IV, including the exclusivity provision. *See Knisley*, 844 F.2d at 388.

Accordingly, the Court finds that the issue of whether Plaintiff sought to run for a union officer position is a factual inquiry, and, at the dismissal stage, the Court must construe all facts in a light most favorable to the Plaintiff. Thus, at this time, the Court will not dismiss Plaintiff's claims on the ground that they are preempted by Title IV of the LMRDA.

### B.  Failure to State a Claim

#### 1.  Title VII Sex Discrimination

The Court first turns to Plaintiff's allegation that she experienced disparate treatment on the basis of sex. ECF No. 1 ¶¶ 56–64. The standard burden-shifting framework used in Title VII cases applies to actions against unions. *Jones v. Giant of Maryland, LLC*, No. CIV.A.DKC 08-0304, 2010 WL 3677017, at *11 (D. Md. Sept. 17, 2010). In such cases, "a union member can introduce evidence that the member was 'singled out and treated less favorably' than members outside of her protected class." *Id.* (quoting *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 882 (9th Cir. 2007)).

At the motion to dismiss stage, a plaintiff need only allege a plausible claim for relief under Title VII. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Still, "the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as

alleged." *Brown v. Hous. Auth. of Baltimore City*, Civ. No. 16-cv-3616-MJG, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017).

A plaintiff may bring a Title VII prima facie case by showing that the plaintiff received "different treatment from similarly situated employees [or union members] outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). Although comparator evidence is not required, a plaintiff who bases her allegations on a comparison to an employee (or employees) from a non-protected class must demonstrate that the comparator was similarly situated in all relevant respects. *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014) (citations and internal quotation marks omitted). Further, there must be "enough common features between the individuals to allow for a meaningful comparison." *Haywood v. Locke*, 387 F. App'x 355, 360 (4th Cir. 2010) (citation and internal marks omitted).

Here, Plaintiff alleges that she was subject to discrimination on the basis of sex by ATU International and Local 689 when she was denied the ability to run for shop steward. ECF No. 1 ¶ 59. She argues the decision prohibiting her from running for the position—on the basis of her status on the 124 List—was pretextual, as evidenced by the fact that several men on the 124 List were permitted to run for similar positions. *Id.* ¶ 60.

Defendant Local 689 counters that Plaintiff has failed to sufficiently explain how the male colleagues permitted to run for union positions were "similarly situated" to her—including whether they were running for a position similar to the one she sought. ECF No. 14-1 at 6; ECF No. 22 at 7. Further, Local 689 argues that an individual is not disqualified under Local 689's rules from seeking office for being on the 124 List; however, in some circumstances, the union

office may require the individual to be based in—or "from"—a particular department. ECF No. 22 at 7–8.

Nevertheless, at this stage, the Court finds that Plaintiff has sufficiently alleged that she was "singled out and treated less favorably than others similarly situated" on account of sex. *Beck*, 506 F.3d at 882. For instance, Plaintiff alleges that at least one of the men seeking office while on the 124 List also sought a position as shop steward in the most recent election. ECF No. 1 ¶¶ 27–28. Accordingly, the Court will not dismiss Count I, as against Local 689, for the actions it took to prevent her from running for shop steward, including its decision to bar her from running in December 2018, its denial of her challenge to that decision in December 2018, and its decision to bar her from running again in March 2019.

Further, Plaintiff alleges that ATU International had knowledge of the purported discrimination and participated in it, first in March 2019, when it denied her the ability to run in the do-over election, and then in September 2019, at ATU International's Convention, when Plaintiff sought to appeal ATU International's decision to overturn the member vote. ECF No. 19 at 26–27. Defendant ATU International argues that Plaintiff's allegations of discrimination involve only the acts of Local 689, and thus Plaintiff has failed to state a claim against it. ECF No. 13-1 at 14–15.

An international union can be directly liable for discrimination or vicariously liable. "Common law agency theories of vicarious liability govern the liability of international labor organizations for the acts of their local unions that violate Title VII." *Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 409 (6th Cir. 1999). Further, "a parent union may be held vicariously liable for the discriminatory acts of its affiliated local union where the facts indicate that the parent and the local have an agency relationship, or where the parent

international union ratifies or supports the local's discriminatory acts." *Rainey v. Town of Warren*, 80 F. Supp. 2d 5, 19 (D.R.I. 2000) (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1429–30 (D.C. Cir. 1988), *clarified on reh.*, 852 F.2d 619 (D.C. Cir.), *cert. denied*, 490 U.S. 1105 (1989)).

Here, Plaintiff does not appear to specify whether she believes ATU International is directly liable for sex discrimination, or whether the organization is vicariously liable for the acts of Local 689, under either of the possible theories of vicarious liability. Instead, Plaintiff has alleged that ATU International's decision to deny Plaintiff the right to run in the re-do election was discriminatory. Without more, however, the accusation is conclusory. *See* ECF No. 1 ¶ 63. Thus, while the Court takes note of Plaintiff's allegation that a senior member of ATU International told her at the organization's September 2019 Convention that he believed she had been wronged by the decisions made against her, that alone is not sufficient, even at the pleading stage, to establish a claim of discrimination against ATU International. *See id.* ¶ 52. Accordingly, the claim as to ATU International must be dismissed.

### 2. Title VII Retaliation

Plaintiff also alleges that Local 689 and ATU International retaliated against her when she sought to challenge the alleged disparate treatment she faced in seeking a position as shop steward. ECF No. 1 ¶¶ 65–73. Plaintiff charges that Local 689 retaliated against her through then-President Defendant Jeter, who allegedly sought to appeal local union members' vote to reinstate Plaintiff's election eligibility "using a never heard of process," failing to notify Plaintiff about said appeal, and seeking to prevent Plaintiff from running for office in a redo election. *Id.* ¶ 69. Plaintiff alleges that Local 689 also retaliated against Plaintiff when Jeter publicly disclosed Plaintiff's disability and home address in a Facebook live video. Meanwhile, Defendants argue

that Plaintiff has not stated a claim for retaliation against either Local 689 or ATU International, respectively. *See* ECF No. 13-1 at 15–16; ECF No. 14-1 at 7–8.

On the issue of retaliation, Title VII provides that:

It shall be an unlawful employment practice for ... a labor organization to discriminate against any member thereof ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Thus, to plead retaliation, a plaintiff must allege "that she engaged in protected activity, that the labor organization took adverse action against her, and that a causal relationship existed between the protected activity and the adverse activity." *Sledge v. Liuna Loc. 11*, No. CV DKC 20-3384, 2022 WL 616826, at *6 (D. Md. Mar. 2, 2022) (quoting *Beck-Pell v. Sheet Metal Workers Loc. #100*, No. PWG-17-2329, 2019 WL 3841935, at *7 (D. Md. Aug. 15, 2019)) (cleaned up). Complaining employees are protected if "at the time of their complaint, they have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018) (citation and internal quotation marks omitted). Further, although retaliatory acts need not "affect the terms and conditions of employment" to come within Title VII's prohibition, they must be "materially adverse"—meaning that they "might have dissuaded a reasonable [member]" from engaging in the protected activity. *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

Here, Plaintiff has not stated a claim for retaliation based on any of the union appeals efforts regarding the disputed election as to either Local 689 or ATU International. The mere fact that Plaintiff's appeals were rejected does not equate to retaliation, and Plaintiff has not alleged

17

facts suggesting that the appeals were handled in such a way as to "dissuade a reasonable member from engaging in protected activity."

Further, having reviewed a recording of the Facebook live video referred to by Plaintiff, *see* ECF No. 1 ¶ 71, the Court finds that the contents of the video are also not adequate to support a claim for retaliation.[7] In the video, Defendant Jeter speaks for more than an hour about the disputed election, and she generally refers to Plaintiff's placement on the 124 List as being the reason why Plaintiff was not permitted to run for shop steward, because she was not "from" a garage at the time of the election, as required by the local bylaws. Further, contrary to the Complaint's conclusory allegations that Local 689, through Jeter, "publicly disclose[d] private health information" about Plaintiff, it appears that Jeter referred only to Plaintiff's being on 124 List and said nothing about the specifics of her injury or her personal circumstances. Plaintiff has not alleged that her placement on the 124 List was confidential or private at this time, or that it was not known to her fellow members in Local 689. In fact, the Court finds it difficult to believe that such information would have been private at this juncture, given that Plaintiff's placement on the 124 List appears to have been central to the ongoing dispute she was having about her ability to run for shop steward.

Moreover, to the extent that Jeter briefly held up Plaintiff's 124 Letter from WMATA, her employer, during the video, any image of Plaintiff's home address at the top of the letter appears fleeting and blurry, and does not rise to the level of retaliation.[8] The image of the letter is also mirrored, so that the text of the Letter reads backwards to anyone watching the video.

---

[7] As noted above, the Court may review documents attached to or incorporated into a complaint without converting a motion to dismiss into a motion for summary judgment. Plaintiff's retaliation claims are based in part on the actions of Defendant Jeter in the Facebook live video, and Plaintiff included a link to a publicly accessible video recording in her Complaint.

[8] The video remains available at https://www.facebook.com/jacklynnjeter/videos/10205549169886283. Jeter held up Plaintiff's 124 Letter at 50:56 for approximately three seconds.

Likewise, Plaintiff has not put forward a survivable claim against ATU International for retaliation. Plaintiff simply argues that ATU International denied her the ability to run in the March 2019 do-over election and that the ATU International used a "secret process" to engage in discrimination and/or retaliation. *Id.* ¶ 72. Without more, this is not a sufficient allegation to merit a claim of retaliation. Thus, the Court will dismiss this count as to all parties.

### 3. Breach of Contract

Next, Plaintiff alleges breach of contract against all Defendants. This Court has supplemental jurisdiction over the Plaintiff's state law claims because they "form part of the same case or controversy" as her federal law claims. 28 U.S.C. § 1367.

Relevant here, a union constitution is a contract between the union and its members. *Int'l Org. of Masters, Mates, & Pilots v. Prevas*, 175 F.3d 341, 343 (4th Cir. 1999); *see also Hogan v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employes*, 629 F. Supp. 1166, 1172 (W.D. Va. 1986), *aff'd sub nom*, *Hogan v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 817 F.2d 248 (4th Cir. 1987) ("The union's Constitution and bylaws constitute the contract between the union and its members."). "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 649 (D. Md. 2010) (citing *Taylor v. Nations Bank, N.A.*, 365 Md. 166, 175 (2001)).

Plaintiff first argues that her right to run for a position as a union official is governed by Local 689's Bylaws ("Local Bylaws") and ATU International's Constitution ("International Constitution"), both of which were allegedly breached when Defendants denied Plaintiff the right to run for the position of shop steward. ECF No. 1 ¶¶ 86–93. Plaintiff principally argues

that section 8(a) of the Local Bylaws provides that any member in good standing for at least two years "shall be eligible to be a candidate and to hold any office or position described in Section 7 hereof." ECF No. 20-2 at 14.

Local Defendants, however, point to the contents of section 7, as referenced in section 8(a). They argue that section 7(b) requires certain representatives to be elected "from and by" each operating division (here, bus garages). *Id.* at 9. Because Plaintiff was on the 124 List at the time she sought office, Local Defendants contend that she could no longer be classified as a bus operator, and therefore, she was no longer "from" a garage. ECF No. 14-1 at 9. Thus, Plaintiff could have sought an "at large" position in Local 689, but she was prevented by the Local Bylaws from being elected to a position as a representative of the bus operators at her former garage. *Id.*

Judgment on this issue again appears to require some additional facts. Assuming without deciding that Defendants' reading of section 7 of the Local Bylaws is appropriate, that section appears to address representatives acting as Executive Board Members. However, as noted above, Plaintiff alleges she sought a non-executive position as shop steward. *See* ECF No. 20 at 23. The Court is required at this stage to accept a plaintiff's allegations as true and to construe any facts in a light most favorable to the plaintiff. Thus, the Court will not dismiss this claim as to Local 689 at this time.

Plaintiff also brings breach of contract claims against two individuals, Defendants Jeter and Jackson, the past and current presidents of Local 689, respectively. ECF No. 1 ¶¶ 91–94. However, claims against individual defendants in their capacity as union officials are generally barred, and, accordingly, the Court will dismiss claims for breach of contract and any other state law claims against Defendants Jeter and Jackson as individuals. *See Cent. Operating Co. v. Util. Workers of Am.*, AFL-CIO, 491 F.2d 245, 253 (4th Cir. 1974).

Next, Plaintiff makes several allegations against Local 689 and ATU International for breach of the International Constitution. First, Plaintiff contests that Local 689 "willfully injured" Plaintiff, as a member, by denying her the full rights, privileges, and benefits of union membership, in violation of section 21.6 of the union constitution.[9] ECF No. 1 ¶ 93.

Under Maryland law, Title VII remedies do not preempt remedies for breach of contract. *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F. Supp. 681, 684 (D. Md. 1998). Here, Plaintiff has alleged that she was denied an opportunity to run for local office, while several similarly situated men were permitted to do so—in line with her claims of Title VII discrimination. Thus, because Plaintiff has sufficiently alleged a Title VII claim as to Local 689, a breach of contract claim for "willful injury" against the local union will likewise survive at this stage.

Next, Plaintiff alleges that Local 689 and ATU International both violated section 21.7 of the International Constitution when Defendant Jeter disclosed her home address on the Facebook video. ECF No. 1 ¶ 94. However, as discussed above, the Court does not find Jeter's actions to rise to the level of disclosing Plaintiff's home address, and thus, this claim will be dismissed as to all parties.

Finally, Plaintiff argues that ATU International denied Plaintiff her rights of appeal as governed by the International Constitution. ECF No. 1 ¶¶ 95–97. Plaintiff argues that ATU International violated section 23 of the Constitution by failing to allow her to speak on behalf of her appeal at the September 2019 International Convention, and that it also violated section 21.6 by denying her right to run for office in March 2019 and then refusing to hear her appeal in September 2016. Here, however, the Court again finds that Plaintiff has not sufficiently stated a claim that ATU International either violated its appeals rules or knowingly wronged Plaintiff in

---

[9] Plaintiff alleges that Section 21.6 states that "No member shall be allowed to injure the interests of a fellow member by undermining him or her in place, wages, or in any other willful act."

such a way as to subject itself to liability. In light of the conclusionary allegations contained in Plaintiff's Complaint, this claim will be dismissed.

### 4. Intentional Infliction of Emotional Distress

Plaintiff further alleges that Defendants caused intentional infliction of emotional distress (IIED) through the sharing of personal information and home address via the Facebook video. ECF No. 1 at ¶¶ 99–104. To state a claim for IIED, a plaintiff must allege: (1) conduct that is "intentional or reckless"; (2) conduct that is "extreme and outrageous"; (3) "a causal connection between the wrongful conduct and the emotional distress"; and (4) emotional distress that is "severe." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 651–52 (D. Md. 2007) (quoting *Harris v. Jones*, 281 Md. 560, 566 (Md. 1977)). The standard for showing that conduct is "extreme and outrageous" is "quite high." *Tyndall v. Berlin Fire Co.*, No. ELH-13-02496, 2015 WL 4396529, at *34 (D. Md. July 16, 2015). To meet this bar, "the conduct must 'completely violate human dignity' and 'strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Kumar v. Mahone*, No. CV GLR-21-735, 2022 WL 279798, at *6 (D. Md. Jan. 31, 2022) (quoting *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D. Md. 2008)). Here, Plaintiff has not met this high bar with regards to her allegations surrounding the Facebook video, for the reasons stated above. Accordingly, this claim is dismissed.

### 5. Negligence

Finally, Plaintiff alleges that Defendants were negligent, or grossly negligent, in their actions with respect to this matter. More specifically, Plaintiff contends that the Defendants owed Plaintiff an ordinary duty of care and that duty was violated when they breached the International Constitution and Local Bylaws. ECF No. 1 ¶¶ 105–116.

22

Generally, however, "Maryland does not recognize a cause of action for negligence arising solely from a contractual relationship between two parties." *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 294 (4th Cir. 2002). Instead, a tort duty may arise only if the contract involves vulnerable parties, or the contractual obligation is otherwise accompanied by an independent duty. *Permira Constr., LLC v. KONE Inc.*, No. CV ADC-18-3771, 2019 WL 2059128, at *3 (D. Md. May 9, 2019). Here, Plaintiff "has not articulated any independent duty owed to her" by Defendants—in fact, she alleges merely an ordinary duty of care—and as such, Plaintiff's "allegations of negligence are really breach of contract claims." *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 105 (D. Md. 2010). The claim will be dismissed on this basis.

In sum, the following claims remain: Count I, Title VII discrimination on the basis of sex as against Local 689; Count V, breach of contract as against Local 689 for violations of section 7 of the Local Bylaws and section 21.6 of the International Constitution. As no counts remain against the individual Local Defendants, Jackson and Jeter, and ATU International, they may be terminated as parties to the suit.

## IV.  CONCLUSION

For the foregoing reasons, ATU International's Motion to Dismiss is granted, and Local Defendants' Motion to Dismiss is granted in part and denied in part. A separate Order follows.

Date: <u>February  24, 2023</u>                      _____/s/_____
                                                            GEORGE J. HAZEL
                                                            United States District Judge